Petition for Writ of Mandamus Denied and Opinion filed August 7, 2008








 

Petition
for Writ of Mandamus Denied and Opinion filed August 7, 2008.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00280-CV

____________

 

IN RE STERLING CHEMICALS, INC., RICHARD CRUMP, JOHN
BEAVER, RESURGENCE ASSET MANAGEMENT, L.L.C., BYRON HANEY, and PAUL ROSTEK, Relators

 

 



 

ORIGINAL
PROCEEDING

WRIT OF MANDAMUS

 



 

O P I N I
O N

On April
10, 2008, relators, Sterling Chemicals, Inc., Richard Crump, John Beaver,
Resurgence Asset Management, L.L.C. (ARAM@), Byron Haney, and Paul Rostek,
filed a petition for writ of mandamus in this court.  See Tex. Gov=t Code Ann. ' 22.221 (Vernon 2004); see also Tex.
R. App. P. 52.  Relators ask this court to compel the respondent[1]
to enforce a forum-selection clause and dismiss the lawsuit filed by the real
party in interest.

We hold
that the trial court did not abuse its discretion in declining to enforce an
ambiguous forum-selection clause.  Therefore, we deny the mandamus petition.








                                                               Background

Sterling
Chemicals, Inc. manufactures and sells acetic acid and plasticizers for its
customers= use in the creation of other chemicals and products.  The other relators
consist of some of Sterling=s officers and shareholders.[2]

On July
25, 2007, Sterling entered into a Memorandum of Understanding (AMOU@) with real party in interest, Gulf
Hydrogen and Energy, L.L.C. (AGulf Hydrogen@) concerning Gulf Hydrogen=s proposed acquisition of Sterling. 
The MOU required that Gulf Hydrogen make three non-refundable deposits of
$100,000, $1,000,000, and $10,000,000 into an escrow account.  In return,
Sterling granted Gulf Hydrogen an exclusivity period during which Sterling
would not solicit other buyers.  The parties later agreed that the exclusivity
period was to terminate on March 1, 2008, at which time the proposed
transaction would close.

The
transaction had not been complete when the exclusivity period terminated on
March 1.  Three days later, Gulf Hydrogen sued relators, alleging that (1)
Haney and RAM made misrepresentations to induce it to enter into the MOU and to
deposit $1,100,000 in escrow; (2) relators refused to go forward with the
transaction or caused the transaction not to be completed; and (3) Sterling
refused to provide and execute closing documents, as required under the MOU,
although Gulf Hydrogen had already tendered performance.

Shortly
thereafter, relators requested that the trial court dismiss the lawsuit based
on a forum-selection clause contained in the MOU.  At a March 27 hearing, the
trial court denied relators= motions to dismiss.  In this original proceeding, relators
assail those rulings as an abuse of the trial court=s discretion.








                                          Mandamus Standard of Review

Mandamus
relief is available to enforce forum-selection clauses.  In re AutoNation, Inc.,
228 S.W.3d 663, 667 (Tex. 2007) (orig. proceeding).  To be entitled to the
extraordinary relief of a writ of mandamus, the relator must show that the
trial court clearly abused its discretion, and it has no adequate remedy on
appeal.  In re Team Rocket, L.P., No. 06-0414, 51 Tex. Sup. Ct. J. 945,
2008 WL 2154092, at *1 (Tex. May 23, 2008) (orig. proceeding).  A trial court
clearly abuses its discretion if it reaches a decision so arbitrary and
unreasonable as to amount to a clear and prejudicial error of law.  Walker
v. Packer, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding).

                                                Contract Interpretation

The MOU
clause we have been asked to enforce provides as follows:

All
documentation in connection with the Proposed Transaction shall be governed by
the internal laws of the State of Delaware, require waiver of jury trials, and
consent to the State of Delaware, and the District of Delaware as being the
exclusive forum for and having exclusive jurisdiction over any disputes.

The parties disagree
about whether this clause applies to disputes arising from the MOU itself.  In
arguing that the clause unambiguously applies to the MOU as a matter of law,
Sterling emphasizes the broad nature of the phrase A[a]ll documentation in connection
with the Proposed Transaction.@   It contends that the MOU is part of Aall documentation;@ therefore, the argument goes, the MOU=s forum selection clause encompasses Aany disputes@ arising from  the MOU itself.  Gulf
Hydrogen disagrees with this interpretation, noting that the parties expressly
provided that the MOU later would be superseded by so-called Definitive
Agreements:








The parties
shall negotiate in good faith to finalize the definitive agreements to give
effect to the Proposed Transaction (which will supersede this MOU) on mutually
agreeable terms between [Gulf Hydrogen] and [Sterling], including customary
terms and as further described in this MOU (the ADefinitive Agreements@).[3]

Gulf Hydrogen contends
that the MOU=s forum selection clause is forward-looking and encompasses only disputes
arising later after the contemplated Definitive Agreements have been created
and executed.  Thus, Gulf Hydrogen contends that (1) as a matter of law, the
MOU=s forum-selection clause is
unambiguous and does not reach disputes arising from documents created before 
execution of the Definitive Agreements; or, in the alternative, that  (2) the
MOU=s forum selection clause is
ambiguous, cannot be interpreted as a matter of law, and cannot serve as a
basis for mandamus at this stage of the litigation.








Whether
a contract is ambiguous is a question of law for the court.  J.M.
Davidson, Inc. v. Webster, 128 S.W.3d 223, 229 (Tex. 2003).  We determine
whether the contract is ambiguous by looking at the contract as a whole, in
light of the circumstances present when the parties entered into the contract. 
Universal Health Servs., Inc. v. Renaissance Women=s Group, P.A., 121 S.W.3d 742, 746 (Tex. 2003). 
That the parties disagree about a contract=s meaning does not render it
ambiguous.  Hewlett-Packard Co. v. Benchmark Elecs., Inc., 142 S.W.3d
554, 561 (Tex. App.CHouston [14th Dist.] 2004, pet. denied).  Rather, a contract
is ambiguous when it is susceptible to more than one reasonable
interpretation.  Frost Nat=l Bank v. L & F Distribs., Ltd., 165 S.W.3d 310, 312 (Tex. 2005). 
An ambiguity in a contract may be either Apatent@ or Alatent.@  Nat=l Union Fire Ins. Co. v. CBI Indus.,
Inc., 907 S.W.2d
517, 520 (Tex. 1994).  A patent ambiguity is evident on the face of the
contract, while a latent ambiguity arises when a contract unambiguous on its
face is applied to the subject matter with which it deals, and an ambiguity
appears by reason of some collateral matter.  Id.  When a contract is
found to be ambiguous, the parties= intent is a determination for the
fact finder.  Coker v. Coker, 650 S.W.2d 391, 395 (Tex. 1983).  The
court may conclude that a contract is ambiguous in the absence of such pleading
by any party.[4]  Sage St.
Assocs. v. Northdale Constr. Co., 863 S.W.2d 438, 445 (Tex. 1993).

We find
no patent ambiguity in the forum-selection clause.  However, when the clause is
examined in light of two contemporaneous companion documents, inconsistencies
between the three documents demonstrate the presence of a latent ambiguity. 
Specifically, this latent ambiguity becomes apparent when we examine certain
provisions in the parties= confidentiality agreements and escrow agreements.  When
clauses in these agreements are analyzed and compared to the MOU=s forum selection clause, it becomes
apparent that Sterling=s Aall documentation@ argument overreaches.

A.        Clauses in Confidentiality
Agreements

Under
the MOU, Gulf Hydrogen was permitted reasonable access to Sterling=s  personnel, property, contracts,
books and records, and other such documents and data so that Gulf Hydrogen
could Acomplete its due diligence with
respect to the Proposed Transaction.@  The MOU also required that the
parties execute one or more confidentiality agreements respecting Gulf Hydrogen=s access to the documents and data. 
Accordingly, Sterling and Gulf Hydrogen entered into two confidentiality
agreements.  Both confidentiality agreements contained the following
jurisdiction clause:

Section 17.  Submission to Jurisdiction.  Each party hereby (a)
irrevocably submits to the non-exclusive personal jurisdiction of any Texas
state or federal court sitting in Harris County, Texas, over any claim
or dispute arising out of or relating to this Agreement and
irrevocably agrees that all such claims and disputes may be heard and
determined in such Texas state or federal court, . . .[5]








This clause contemplates
that litigation of disputes relating to the confidentiality agreement will take
place in Texas.  Litigation in Texas is inconsistent with the MOU=s forum selection clause, which
contemplates litigation only in Delaware of Aany disputes@ arising from A[a]ll documentation in connection
with the Proposed Transaction.@  Logically, the confidentiality agreements could be
considered part of A[a]ll documentation in connection with the Proposed Transaction,@ and yet those agreements contemplate
litigation of disputes concerning those agreements in a forum other than the
exclusive forum chosen in the MOU=s forum selection clause.[6] 
This inconsistency gives rise to an ambiguity regarding the meaning of the
phrases Aall documentation@ and Aany disputes@ in the MOU=s forum selection clause as the
exclusive jurisdiction for Aany dispute@ arising out of A[a]ll documentation in connection
with the Proposed Transaction.@ 

B.        Clauses in Escrow
Agreements

A
similar tension arises when the escrow agreements are considered.  The MOU
required Gulf Hydrogen to pay Sterling three non-refundable deposits of
$100,000, $1,000,000, and $10,000,000.  The MOU provided that the ANon-Refundable Deposits, along with
any accrued interest, will be held in an escrow (AEscrow@) to be established by [Sterling] as
approved by [Gulf Hydrogen] and applied to the Purchase Price at Closing.@  Sterling and Gulf Hydrogen entered
into two escrow agreements with regard to Gulf Hydrogen=s $100,000 and $1,000,000
non-refundable deposits.  Both escrow agreements contained the following
jurisdiction clause:








8.  Governing Law and Counterparts.  This Agreement shall be
governed by and construed in accordance with the laws of New York and may be
executed in separate counterparts, all of which together shall be considered as
but one document.  Each party shall submit to the non-exclusive jurisdiction of
the courts sitting in New York.

Like the confidentiality
agreements, the escrow agreements could be considered Adocumentation in connection with the
Proposed Transaction.@  Thus, if the sweeping language of the MOU clause is to
include the MOU itself, as Sterling claims, it likewise encompasses disputes
arising from the confidentiality and escrow agreements.  Yet we cannot, as a
matter of law, reconcile Sterling=s interpretation with the fact that
the documents contain inconsistent jurisdiction provisions.

Relators
contend that the confidentiality and escrow agreements should not be considered
in our interpretation of the MOU clause because in each agreement, the
jurisdiction clause applies only to that particular agreement.  As a
threshold matter, this contention arguably conflicts with the teaching that Ainstruments pertaining to the same
transaction may be read together to ascertain the parties= intent.@  Fort Worth  Indep. Sch. Dist. v.
Fort Worth, 22 S.W.3d 831, 840 (Tex. 2000).  Furthermore, this argument
would not explain why the escrow and confidentiality agreements should be
included in A[a]ll documentation in connection with the Proposed Transaction,@ including the MOU, but have their
own jurisdiction clauses.  Relators have argued themselves into a double blind:
they cannot maintain that the MOU is part of A[a]ll documentation@ such that any claims regarding the
MOU fall under the exclusive jurisdiction of the court in Delaware, while at
the same time assert that the other agreementsCwhich logically could also be
considered Adocumentation in connection with the Proposed Transaction@Cshould not be considered in our interpretive
context  This tension cannot be eliminated by asserting that the clauses in the
confidentiality and escrow agreements focus primarily on personal jurisdiction,
while the MOU=s clause focuses on forum.  These clauses must be considered together
because no purpose would be served by agreeing to the personal jurisdiction of
a court located in a forum other than the exclusive forum selected by the
parties.








This
inconsistency among the three agreements creates a latent ambiguity in the A[a]ll documentation in connection
with the Proposed Transaction@ language from the MOU forum-selection clause.  See Wright
v. Eckhardt, 32 S.W.3d 891, 896 (Tex. App.CCorpus Christi 2000, no pet.).[7] 
Because it is susceptible to more than one reasonable interpretation, the MOU
clause is ambiguous.  See Frost Nat=l Bank, 165 S.W.3d at 312.  The
forum-selection clause reasonably may interpreted either as including the MOU
itself, or as inapplicable to disputes arising before the subsequent execution
of the Definitive Agreements that were to seal the transaction.

Given
the ambiguity in the forum-selection clause, we cannot say that the trial court
abused its discretion by denying relators= motions to dismiss.  When a contract
is ambiguous, the parties= intent is a determination left to the exclusive province of
the fact finder.  Coker, 650 S.W.2d at 395.  We may not address disputed
fact issues in an original mandamus proceeding.  Davenport v. Garcia,
834 S.W.2d 4, 24 (Tex. 1992) (orig. proceeding); Brady v. Fourteenth Court
of Appeals, 795 S.W.2d 712, 714 (Tex. 1990) (orig. proceeding) (op. on reh=g).

Relators
have not established their entitlement to the extraordinary relief of a writ of
mandamus.  Accordingly, we deny relators= petition for writ of mandamus.

 

/s/      Adele Hedges

Chief Justice

 

Petition Denied and Opinion filed
August 7, 2008.

Panel consists of Chief Justices
Hedges, Justice Boyce, and Senior Justice Hudson.*









            [1]           The
Honorable Susan Criss, presiding judge of the 212th District Court of Galveston
County.





            [2]           Richard
Crump is Sterling=s president and CEO; John Beaver is its CFO; Paul
Rostek is a Sterling senior vice president; RAM is an 83% shareholder in
Sterling; and Byron Haney is a Sterling board member and a RAM director.





            [3]           Emphasis
in original.





            [4]           Gulf
Hydrogen did not plead ambiguity, and first raised the issue at the hearing.





            [5]           Emphasis
added.





            [6]           Sterling
attempts to remedy this inconsistency by arguing that the two jurisdiction
clauses do not conflict inasmuch as the Confidentiality Agreement=s jurisdiction clause provides for non-exclusive
jurisdiction in Harris County.  However, expressly permitting the parties to
litigate a dispute in a forum other than the Aexclusive@ jurisdiction, by definition, makes the Aexclusive@
jurisdiction non-exclusive.  We are not redrafting the terms of the
parties= agreements to treat the Aexclusive@
MOU forum-selection clause as non-exclusive.  See Fein v. R.P.H., Inc.,
68 S.W.3d 260, 267 (Tex. App.CHouston [14th
Dist.] 2002, pet. denied).  However, we cannot ignore an obvious inconsistency
between two patently-unambiguous jurisdiction clauses.  





            [7]           See
also South Plains Lamesa R.R., Ltd. v. Kitten Family Living Trust, No.
07-06-00209-CV, 2008 WL 223847, at *3 (Tex. App.CAmarillo Jan. 28, 2008, pet. denied) (mem. op.) (A[T]o the extent that the two contracts contained
inconsistent terms, we find that the two agreements, when construed together,
created an ambiguity.@).





            *Senior
Justice Hudson sitting by assignment.